UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS BELLAMY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   NO. 3:10cv1219 (MRK) |
| | : |
| GENERAL DYNAMICS CORP., | : |
| ELECTRIC BOAT DIVISION, | : |
| | : |
| Defendant. | : |

**MEMORANDUM OF DECISION**

Plaintiff Thomas Bellamy brings suit against General Dynamics Corp., Electric Boat Division ("Electric Boat") under the Americans with Disabilities Act of 1990 as Amended ("ADA"), 42 U.S.C. § 12101 *et seq*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 *et seq.* Mr. Bellamy alleges that his employment was terminated based on his disability. Pending before the Court are Electric Boat's Motion for Summary Judgment [doc. # 34] and Electric Boat's Motion to Strike Affidavit of Thomas Bellamy [doc. # 43].

As an initial matter, the Court notes that motions to strike are not the appropriate vehicle for contesting statements of fact in another party's affidavit offered in support of a motion for summary judgment. *See Ricci v. DeStefano*, No. 3:04 CV 1109 (JBA), 2006 WL 2666081, at *3 (D. Conn. Sept. 15, 2006) (noting that, under Local Rule 56(a)1, courts consider only those statements which are supported by evidence and that motions to strike inadmissible evidence are unnecessary) (citing cases). The motion to strike is therefore denied.

1

On the merits, the Court finds (1) that Mr. Bellamy fails to state a *prima facie* case based on an actual or perceived disability and (2) that he has introduced no evidence that would persuade a reasonable jury that Electric Boat's legitimate business reason for his termination—its finding that he had violated the company's prohibition on violence in the workplace—was pretext for illegal discrimination. Accordingly, the Court grants the motion for summary judgment with regard to the ADA claims. The Court declines to exercise supplemental jurisdiction over the CFEPA claim.

## I.

These facts are culled from the parties' Local Rule 56(a) Statements [docs. # 35, 41], affidavits, and exhibits. All of the facts recited below are undisputed unless otherwise noted, and the Court presents all facts "in the light most favorable to the nonmoving party"—here, Mr. Bellamy—after drawing "all reasonable inferences in [his] favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks omitted). Additional facts are discussed in the analysis where relevant.

Electric Boat is a Delaware corporation with its principle place of business in Groton, Connecticut. It hired Mr. Bellamy in 1990 or 1991, and promoted him to Foreman on December 25, 1994. Mr. Bellamy served as a Foreman until his employment was terminated effective January 25, 2010. Mr. Bellamy has worked with Michael Appio, also a Foreman, since 2003.

As a supervisor, Mr. Bellamy was required to be familiar with the contents of the employee handbook. Prior to December 21, 2009, Mr. Bellamy was aware that Electric Boat had a zero-tolerance policy against violence in the workplace and that fighting, pushing, and other unwelcome physical conduct could justify discharge, even on a first offense. This policy was discussed in Electric Boat's Employee Handbook, Standards of Business Ethics and Conduct,

and Policy Statement. Mr. Bellamy once attended an Electric Boat seminar on violence in the workplace, in which it was emphasized that Electric Boat had a zero tolerance policy, and Electric Boat has records of Mr. Bellamy receiving online, computerized training regarding this policy in December 2006, December 2007, November 2008, and October 2009.[1]

In February 2009, Mr. Bellamy suffered a heart attack and missed five weeks of work. Upon his recovery, he returned to his same job and job duties without any restrictions. As a result of his heart attack, Mr. Bellamy has not experienced any difficulties in seeing, hearing, sleeping, walking standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, or working. With regard to his work, Mr. Bellamy testified at his deposition that he did not have any difficulty in performing the manual tasks associated with his job. Although Mr. Bellamy told Electric Boat's medical staff about medications he took after his heart attack, he did not inform his supervisors or Human Resources about these medications. However, Mr. Bellamy maintains that the HR department had access to his medical information.

On December 21, 2009, Mr. Bellamy was working the 3:00-11:00 pm shift. At approximately 3:10 pm, he went to Mr. Appio's desk to pick up the necessary paperwork for the shift change. While Mr. Bellamy was at Mr. Appio's desk, Mr. Appio asked about certain testing equipment. Mr. Bellamy answered, and Mr. Appio responded by telling Mr. Bellamy not to yell at him. Mr. Bellamy responded that he wasn't yelling; Mr. Appio maintained that he was; and Mr. Bellamay raised his voice and said, "[T]his is yelling." Def.'s 56(a) Statement [doc. # 35-3] Ex. 3 at 38 (Bellamy Dep.). Mr. Appio then stood up and leaned in so close to Mr. Bellamy that his spittle fell on Mr. Bellamy's face and that his body pressed against Mr. Bellamy's, although

---

[1] Mr. Bellamy noted at his deposition that he may not have actually completed the online trainings.

Mr. Appio's hands were on the desk and were not raised in a threatening gesture. Mr. Bellamy told Mr. Appio to get out of his face, and Mr. Appio refused to do so.

At this point, the parties' characterization of what occurred differs slightly. Mr. Bellamy maintains that he non-aggressively "moved" Mr. Appio away from him, *see id.* at 42 ("I did not push him. I pushed him away from me to get him out of my face."); *id.* at 43 ("I didn't push him hard. I just moved him away from me."); Def.'s 56(a) Statement [doc. # 35-8] Ex. 8 (Bellamy Statement) ("At that time, I pushed Mike. I did this not as an act of aggression, but simply because I did not like him in my face and I wanted him to move."); Def.'s 56(a) Statement [doc. # 37] Ex. 9.C (Pottebaum Statement) ("Bellemy [*sic*] then shoved Appio on the shoulder and turned to leave the cubicle."), and that in response Mr. Appio pushed him, causing Mr. Bellamy to fall down and lose his glasses, *see* Def.'s 56(a) Statement [doc. # 35-3] Ex. 3 at 44 (Bellamy Dep.); Def.'s 56(a) Statement [doc. # 37] Ex. 9.C (Pottebaum Statement) ("Appio then shoved Bellemy [*sic*] with both hands and Bellemy [*sic*] fell backwards onto Mr. Loupos' desk and onto the floor."). Meanwhile, Electric Boat states that Mr. Bellamy "pushed" Mr. Appio away, *see* Def.'s 56(a) Statement [doc. # 35-3] Ex. 3 at 41 (Bellamy Dep.) ("I didn't like it, and that's why I pushed him away from me to get him out of my face."), and that Mr. Appio then pushed Mr. Bellamy, causing him to fall back and lose his balance without falling down, *see id.* at 45-46 ("I hit my leg on the chair that was behind me, which is what actually kept me from falling onto the floor.").

At about this time, other employees intervened to stop the altercation, and Mr. Bellamy then threatened to "kick Mr. Appio's ass." *Id.* at 54. The parties disagree as to whether Mr. Bellamy could have avoided touching Mr. Appio. *Compare id.* at 50 ("[I]t's a natural reaction, this is a reaction thing push. This is something that a person would do. If I got into your face,

4

you would do the same thing."), *with id.* at 51-52 (agreeing that he could have avoided using his arms to make physical contact).

Almost immediately afterwards, the two men met with Chief Test Engineer Bruch Laney, their supervisor, and Mr. Appio apologized for his actions. Mr. Bellamy did not apologize or accept Mr. Appio's apology. After this meeting, Mr. Bellamy returned to work.

Mr. Bellamy and Mr. Appio had previously had run-ins, including heated exchanges, but these previous incidents had not resulted in physical contact. Mr. Bellamy maintains that Michael Dumas, an electrician, also had a similar interaction with Mr. Appio, but it appears that there was no physical contact between the two. *See* Pl.'s 56(a) Statement [doc. # 41-1] Ex. 3 ¶ 8 (Dumas Affidavit) ("At that time, Appio came up close to me, stood over me in a threatening manner, about six (6) inches from my face, and I smelled his bad breath, which was highly offensive. He yelled at me, threatened me, and I ended up walking away after several minutes of attempting to reason with him.").

Electric Boat conducted an investigation of the incident, which included taking statements from Mr. Bellamy, Mr. Appio, and other witnesses. In his deposition, Mr. Bellamy maintained that he initialed and signed the statement taken pursuant to this investigation, even though it did not include certain facts that would have made it more complete and therefore more accurate, because he was concerned about losing his job. He agreed, however, that the statements included in the statement were themselves truthful—his concern was that they did not provide the full picture of what occurred.

Mr. Bellamy was suspended pending the outcome of the investigation, although Michael Ross assured him that he would be back. In their report on the investigation, the Security Department investigators concluded that Mr. Bellamy was the initial physical aggressor, that

5

both Mr. Bellamy and Mr. Appio had engaged in threatening or violent behavior during normal working hours and on company property, and that such conduct was prohibited under the policy against workplace violence. Based on the results of this report, Mr. Bellamy was notified that he would be terminated effective January 25, 2010. Mr. Appio was also terminated for violating the policy.

Mr. Appio subsequently reapplied to work for Electric Boat and was rehired in December 2010. As of his March 15, 2011 deposition, Mr. Bellamy had not reapplied to work for Electric Boat, but he did so on October 28, 2011, just over a week before responding to Electric Boat's motion for summary judgment.

## II.

This Court applies a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). A "material fact" is one whose resolution will affect the ultimate determination of the case. *See Anderson*, 477 U.S. at 248. A factual dispute is "genuine" when the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *See id.*; *see also Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006).

In a motion for summary judgment, the burden is initially on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (quotation marks

and citations omitted). In evaluating the moving party's evidence, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Sologub v. City of N.Y.*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks omitted). If the moving party meets this burden, the party against whom summary judgment is sought "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quotation marks omitted) (emphasis in original). The plaintiff may not prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," *id.* at 587, as "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff],'" *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson,* 477 U.S. at 252). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Merely verifying—or contesting—the allegations of the complaint in an affidavit is insufficient to oppose a motion for summary judgment. *See Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

The Second Circuit has cautioned that district courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and quotation marks omitted). However, even where an employer's intent is at issue, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.* "[A] party may not rely on mere speculation or conjecture as

to the true nature of the facts to overcome a motion for summary judgment." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995) (quotation marks omitted).

Mr. Bellamy argues that there are questions of fact as to whether Electric Boat perceived him as being a person with a disability, whether he was unreasonably terminated after non-aggressive and/or defensive physical contact with another employee, and whether the investigation of the December 21, 2009 incident was biased against him because of his real or perceived disability. Notwithstanding Mr. Bellamy's arguments, the Court finds that summary judgment is appropriate; for reasons described in more detail below, there are no genuine issues of *material* fact. *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005).

### III.

The ADA prohibits discrimination in employment against any "qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a). Claims of intentional discrimination in employment under the ADA are analyzed under a version of the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

#### A.

To establish a *prima facie* case of disability discrimination, a plaintiff must prove that: (1) the employer is subject to the ADA; (2) the plaintiff is a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise able to perform the essential functions of his job, with or without accommodations; and (4) the plaintiff suffered an adverse employment action because of his or her disability. *See, e.g.*, *Sista*, 445 F.3d at 169. A plaintiff's burden in

establishing a *prima facie* case of discrimination under the *McDonnell Douglas* standard is *de minimis. See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir. 1998).

The parties agree that Electric Boat is subject to the ADA and that Mr. Bellamy's termination constituted an adverse employment action, and they do not appear to dispute that Mr. Bellamy was qualified to perform the essential functions of his position. The question, then, is whether Mr. Bellamy was a person with a disability within the meaning of the ADA. A person satisfies this requirement if he or she has (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Mr. Bellamy makes no attempt to argue that he has an impairment as a result of his heart attack. To the contrary, Mr. Bellamy testified at his deposition that, as a result of his heart attack, he has not experienced any difficulties in seeing, hearing, sleeping, walking standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, or working. He also specifically agreed that he did not have any difficulty in performing the manual tasks associated with his job. Nor does Mr. Bellamy contest Electric Boat's argument that he cannot satisfy any of the three requirements of the *Bragdon* test for evaluating whether an individual has a disability for the purposes of the ADA. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (requiring a plaintiff to demonstrate that he suffers from an impairment, identify a life activity and establish that it is a major one, and show that his impairment substantially limits that activity).

Instead, Mr. Bellamy argues that Electric Boat perceived him as having an impairment that limited his ability to work. *See* 42 U.S.C.A. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

However, Mr. Bellamy does not introduce convincing evidence that he was perceived as having a disability or that this perception was a factor in Electric Boat's decision to terminate his employment. In his deposition, Mr. Bellamy was asked if he had any knowledge or information to support his claim that his heart attack was a factor in Electric Boat's decision to terminate him. He stated that he did not have any such information, and when pressed further, agreed that it was "merely speculation." Def.'s 56(a) Statement [doc. 35-3] Ex. 3 at 72 (Bellamy Dep.). An untutored deponent might make such an admission without it carrying legal significance, but here Mr. Bellamy appears to have accurately assessed his case. He offers no evidence, other than his admittedly speculative theory, that his heart attack was relevant to Electric Boat's decision to terminate his employment. Mr. Bellamy's statement in his affidavit, that he believed his heart attack played a role in Electric Boat's decision regarding his termination, is similarly ineffectual. *See Zigmund*, 106 F. Supp. 2d at 356 (noting that merely verifying allegations in an affidavit is insufficient to oppose a motion for summary judgment). Accordingly, the motion for summary judgment could be granted on the basis that Mr. Bellamy has failed to state a *prima facie* federal or state law claim for discrimination based on real or perceived disability.

B.

Furthermore, even assuming *arguendo* that he did state a *prima facie* case of disability discrimination, Mr. Bellamy has introduced insufficient evidence to convince a reasonable jury that Electric Boat's legitimate business reason for his termination—its finding that he had violated the company's policy regarding violence in the workplace—was pretext for illegal discrimination

First, Mr. Bellamy's unsupported beliefs and claims are not, standing alone, sufficient to defeat Electric Boat's motion for summary judgment. *See F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (noting that the party opposing summary judgment "may not rely upon conclusory allegations or unsubstantiated speculation." (quotation marks omitted)); *Lipton*, 71 F.3d at 469.

Nor are the facts upon which Mr. Bellamy bases his allegations persuasive. The fact that Mr. Bellamy's supervisor sent him back to work after the December 21 incident, before an investigation was conducted, is not persuasive evidence that his eventual termination was not based on that altercation—much less that is was based on a perceived disability. Nor does the Dumas/Appio incident constitute a reasonable comparison, as there was no physical contact between the two men. Mr. Bellamy does claim in his deposition that a ship superintendent was involved in a similar or more violent situation but was not terminated. However, Mr. Bellamy recognizes that he has no personal knowledge or evidence of this incident. As this Court recently had opportunity to observe, it may not credit hearsay in evaluating motions for summary judgment. *See Piela v. Conn. Dep't of Corr.*, No. 3:10cv749 (MRK), 2012 WL 1493827, at *1 (D. Conn. Apr. 26, 2012) (citing *Estate of Hamilton v. City of New York*, 627 F.3d 50, 54 (2d Cir. 2010); *Lawrence v. Mehlman*, 389 F. App'x 54, 56 n.2 (2d Cir. 2010); *Feingold v. New York*, 366

F.3d 138, 155 n.17 (2d. Cir. 2004)). Finally, Mr. Bellamy asserts that Electric Boat's custom and practice is "to leave this type of matter to the department head, irrespective of [Electric Boat's] written policies and procedures; the fact that suddenly [Electric Boat's] managers escalated the incident to the level of formal investigation, administrative leave, and termination was highly unusual." Pl.'s 56(a) Statement [doc. # 41-1] Ex. 1 ¶ 5 (Bellamy Affidavit). This assertion, however, is unpersuasive, as it is unsupported by evidence or examples.

Mr. Bellamy attempts to create a question of fact as to whether he "pushed" or non-aggressively "moved" Mr. Appio. However, even assuming that there was a non-aggressive "moving" that would not constitute a violation of the policy against workplace violence, it is undisputed that Mr. Bellamy then threatened to "kick Mr. Appio's ass"—a threat that itself violates the policy. *See* Def.'s 56(a) Statement [doc. # 35-5] Ex. 5 at 70 (Employee Handbook); Def.'s 56(a) Statement [doc. # 35-6] Ex. 6 at 15 (Standards of Business Ethics and Conduct); Def.'s 56(a) Statement [doc. # 35-7] Ex. 7 at 6 (Policy Statement).

Still other facts cut against Mr. Bellamy's preferred inference. He was able to return to work immediately following his recovery from his heart attack and resume his prior responsibilities. There is no evidence that anyone made any disparaging or even questioning comments about his ability to perform his tasks. He was not terminated until January 25, 2010—almost a full year after his heart attack, but just over two weeks from the submission of the investigators' report on the December 21, 2009 incident.[2]

---

[2] Mr. Bellamy also implies that he may have been terminated because he was close to being eligible for his twenty year retirement. However, this allegation actually cuts against Mr. Bellamy's federal case, as this would imply that Electric Boat's actions were pretext, but not pretext for illegal discrimination. *See McDonnell Douglas*, 411 U.S. at 804 (requiring a plaintiff to show evidence of pretext based on illegal discriminatory animus); *Piela*, 2012 WL 1493827, at *10 (same).

For all of the above reasons, even if Mr. Bellamy had stated a *prima facie* case, he has not provided sufficient evidence to convince a reasonable juror that Electric Boat's proffered reason for his termination was pretext for illegal discrimination.

### IV.

As this Court is reluctant to exercise supplemental jurisdiction in non-diversity cases, it does not now evaluate Mr. Bellamy's CFEPA claim. *See* 28 U.S.C. § 1367(c)(3) (noting that a district court may decline to exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases). In reaching this decision, the Court is influenced by the fact that the CFEPA definition of disability is broader than the federal one, largely because the CFEPA does not require that a plaintiff's impairment "substantially limit" that individual's major life activities. *See Brown v. City of Waterbury Bd. of Educ.*, 722 F. Supp. 2d 218, 227-28 (D. Conn. 2010).

The Court questions whether Mr. Bellamy could effectively state a CFEPA claim on this record, given that "Connecticut law does not provide a cause of action for perceived physical disability discrimination," *Brown*, 722 F. Supp. 2d at 228, and that Connecticut courts look to federal employment discrimination law in enforcing state antidiscrimination statutes, *see Colby v. Pye & Hogan LLC*, 602 F. Supp. 2d 365, 370 n.4 (D. Conn. 2009) (noting that ADA and CFEPA claims may be addressed together) (citing *Levy v. Comm'n on Human Rights & Opportunities*, 236 Conn. 96, 103 (1996)). However, the Court leaves this determination to the state courts.

## V.

The Court DENIES Electric Boat's Motion to Strike Bellamy Affidavit [doc. # 43]. However, as Mr. Bellamy fails to establish a *prima facie* case of discrimination based on disability and because he has not offered sufficient evidence to persuade a reasonable juror that Electric Boat's decision to terminate his employment was pretextual, Electric Boat's Motion for Summary Judgment [doc. # 34] is GRANTED with regard to the federal claim. **The Clerk is directed to enter judgment in favor of Defendants and to close this case.**

IT IS SO ORDERED.

　/s/  Mark R. Kravitz　
United States District Judge

Dated at New Haven, Connecticut: **June 4, 2012.**